FILED
NOV 19 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL L. MORRISON, § | SA21CA1156 OG |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO.:_____ |
| § | |
| KINETIC CONCEPTS, INC., § | |
| DEFENDANT. § | JURY TRIAL DEMANDED |

## COMPLAINT

### I.
### INTRODUCTION

1. Michael L. Morrison (Mr. Morrison hereafter) files this civil rights action against Kinetic Concepts, Inc., (KCI hereafter), his former employer, for discharging him from employment because of his race, African American, in violation of his rights and protections under 42 U.S.C. Sec. 1981.

2. Mr. Morrison seeks to recover the full spectrum of remedies available to a prevailing plaintiff including but not limited to back pay, front pay in lieu of reinstatement, compensatory damages for emotional harm and punitive damages.

### II.
### JURISDICTION

3.      The court has jurisdiction of the action under (1) 28 U.S.C. Sec. 1331 (federal question) and 2) 28 U.S.C. Sec. 1343 (civil rights).

## III.

## PARTIES

4.      Plaintiff Michael L. Morrison is an individual who resides in San Antonio, Bexar County, Texas.

5.      Defendant Kinetic Concepts, Inc., is a domestic for-profit-corporation organized under the laws of state of Texas. Its registered address is 3M Center Blvd, 224-5N-40, St. Paul 55144-1000 MN., USA.  At all times relevant to this action, KCI was doing business in the State of Texas. KCI's registered agent's name is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company.  KCI may be served with the summons and complaint through its registered agent whose address is 211 E, 7th Street,  Suite 620, Austin, Texas 78701-3136, USA.

## IV.

## THE CASE AND CONTROVERSY

6.      Michael L. Morrison is a 60 year old, male, military veteran, who was discharged from his employment with KCI on December 6, 2017, because of his race - African American.

7.      Mr. Morrison was employed with KCI as a Customer Technical Services Representative at its San Antonio, Texas facility from on or about October 10, 2015, to December 6, 2017. He was the only African American male employed by KCI in the customer services department. His job required him to answer incoming calls for technical support and product information from

KCT's customers. KCI manufactures and distributes advanced wound therapeutic devices world-wide.

8. Mr. Morrison was considered a "valued employee" by KCI and received high marks for his job performance, including high reviews from satisfied customers. His immediate manager, Elton Carrillo, spoke highly of his "work ethic" and his rapport with KCI customers.

9. Despite his satisfactory job performance, KCI had issues with Mr. Morrison because of his speech at the workplace that KCI did not tolerate coming from an African American, as is Mr. Morrison.

10. From the day he was hired to the day he was fired, Mr. Morrison experienced racial prejudice and discrimination against him because he is African American. At the workplace, co-employees of Mr. Morrison celebrated each other's birthdays with a cake and gifts. There was no birthday cake or gifts for Mr. Morrison because he is African American. An employee commented to him that his "kind" aged well, referring to the fact that Mr. Morrison is African American or Black. There was a pronounced double-standard at the KCI workplace under which Blacks or African Americans were treated less favorably than non-Blacks.

11. Other pronounced acts of intentional race discrimination against Mr. Morrison because he is African American include but are not limited to the following: (A) While KCI security badge carrying employees were allowed to freely go upstairs to the KCI Global Headquarters office because he is African American he was required to wait downstairs until he was given specific security clearance even though he carried a security badge around his neck. (B) Management provided him with free box seat tickets to a San Antonio Spurs basketball game that seated him

next to two KCI employees - an African American lesbian couple. (C) He received no invitation for a job interview after submitting several applications for a different, better paying job, with KCI because of intentional discrimination against him because he is African American. (D) KCI had a pattern -and-practice of undertaking employee discipline against him that manifested a double-standard – one for African Americans and the other for non-Blacks. KCI management automatically gave more weight to the so-called witness statements of non-Black employees and automatically gave zero weight to Mr. Morrison's statements in its disciplinary actions against Mr. Morrison. His workplace speech – which was as frank and open as that of his co-workers – subjected him to disciplinary action because KCI had zero tolerance for his speech because he is African American.

12.     KCI's racist double-standard showed its ugly head the day before KCI fired Mr. Morrison on December 6, 2017. On December 5, management called Mr. Morrison on the carpet to discuss a comment that he had attempted to post related to an article authored by Andy Eckert in his President's Blog titled, "Taking A Stand Against Harassment in The Workplace." The blog purportedly served as a social media platform for employee/management communication. However, as was demonstrated by KCI in Mr. Morrison's case, critical comments from an African American employee about workplace issues were subjected to a double -standard by KCI. KCI had zero or less tolerance for critical workplace speech by African Americans than it had for such speech from non-African American employees.

13.     Mr. Morrison comment was titled, "What Happens When There Is Sexual Harassment Injustice?", in which he raised due process concerns, such as the right of the accused to confront his/her accuser, with the anonymous complaint aspect of an anti-workplace harassment policy.

Mr. Morrison's comment states: "So why then are we hiding behind the anonymous hotline?" … If the person making the accusation is brave enough to call[,] [t]hen should be brave enough to face the person in person." In his comment, Mr. Morrison further states, "So how can [KCI] investigate legitimate issues that are reported and anonymity will be maintained. This is where inequality in the workplace is one-sided…[.]" This one-sidedness was tainted moreover by KCI's double-standard for African Americans or Blacks and non-African Americans or non-Blacks. Other KCI non-Black employees' comments critical of the President's Blog article were posted, but not Mr. Morrison's because of his race – African American – for whose workplace speech KCI had zero or less tolerance.

14. Notably, Mr. Morrison's comment did not express opposition to a workplace anti-harassment policy; he only expressed opposition to the anonymous complaint part of such a workplace policy.

15. KCI purportedly discharged Mr. Morrison for a pattern of unprofessional and inappropriate behavior, but this was a pretext for race discrimination by KCI against Mr. Morrison. To make its case of such a pattern, KCI cited a comment that Mr. Morrison made on the eve of Thanksgiving 2017. Mr. Morrison commented in passing to a female co-worker – Jackie Torres - to have a Happy Thanksgiving, and "Don't eat too much turkey and be careful" to which Mr. Torres replied, "Okay and you be careful too." However, his comment was distorted in an anonymous complaint from another co-worker that alleged that Mr. Morrison said, "Don't eat too much turkey, you already have a lot of junk." Ms. Torres did not have a complaint about any comment Mr. Morrison made to her on the eve of Thanksgiving. KCI tried to take cover under this disciplinary session – to conclude a so called pattern on improper conduct - involving Mr.

Morrison for its true reason for firing Mr. Morrison: KCI's zero tolerance for frank and open workplace speech from a Black or African American employee as is Mr. Morrison.

16. Mr. Morrison was subjected to a double-standard because he is African American. He was disciplined based on hearsay evidence not even produced at the meeting, and without the opportunity to confront his accuser. As an African American, his own statements did not carry any weight with KCI management. But the facts and circumstances surrounding Mr. Morrison's discharge on December 6, 2017, show that what truly served as the but for basis for his discharge was because as an African American, he did not have the same free speech workplace rights as non-African Americans. KCI had zero to little tolerance for the comment that he wrote and tried to post in the President's blog page because Mr. Morrison is African American or Black, and that is what caused his discharge.

17. This can be discerned by the series of events that transpired before December 5, 2017, when Mr. Morrison was called on the carpet by KCI management twice. By the time that KCI's HR head and Elton Carrillo, Mr. Morrison's immediate supervisor, had a meeting with him to discuss the comment that he made to Ms. Torres, a co-worker, on the eve of Thanksgiving 2017, KCI had engaged several individuals from different departments including Corporate Communications and Human Resources in what it called a collective decision-making process as to how they were going to respond to Mr. Morrison's comment. This extensive, orchestrated collective action by KCI's highest levels of management just to respond to Mr. Morrison's comment to the President's blog article led to Mr. Morrison's discharge. At that fateful meeting, the head of KCI's Customer Service Department, Mr. Loren, and KCI's HR head, Jennifer Hernandez, called Mr. Morrison on the carpet to informed him that his comment would not be

posted because it was opposed KCI's anti-harassment workplace policy. Unmasked, it was this comment by Mr. Morrison, an African American, that led to his discharge. As an African American, Mr. Morrison did not enjoy the same free speech rights at the workplace as did non-African American employees. Indeed, KCI had zero to little tolerance for Mr. Morrison's speech at the workplace because he is African American. And because Mr. Morrison dared to speak critically, a workplace right and privilege reserved by KCI for non-African American employees, about a KCI workplace policy he did not agree with, this was the but for cause for Mr. Morrison's discharge.

18.    The foregoing actions by KCI are wholly incongruent with KCI's stated position that Mr. Morrison's comment to the President's blog article that he tried to post on the President's Blog page was not the basis for his discharge or that he would have been discharged in any case for his pattern of inappropriate conduct. Whichever basis KCI cites for Mr. Morrison's discharge, it's plain to see that Mr. Morrison would not have been discharged but for the fact that KCI had zero tolerance for his workplace speech because he is African American.  At least two of KCI's non-Black employees posted critical comments about the President's blog article, neither being censored or discharged. One non-Black employee posted a comment that there were confirmed complaints against "people in power" that were being ignored that left certain employees living in fear. Another KCI non-Black employee criticized the President's blog article as a "stock response." KCI did not call either of these two employees to the carpet to discuss their critical comments and thereafter discharge them like KCI discharged Mr. Morrison for his comment to the post.

19.     KCI took extraordinary actions to respond to Mr. Morrison's comment in response to the President's blog article as it related to the anonymous complaint part of the workplace anti-harassment policy. They were extraordinary actions by KCI if indeed it had already made the decision to discharge him because of the Thanksgiving eve comment he had made to Ms. Torres.

20.     KCI admitted that it tolerated critical comments to the President's blog article without any of those employees suffering discipline or a discharge for posting such comments. KCI did not engage several individuals from different departments in a collective decision-making process of how to respond to them or call them on the carpet to discuss their adverse comments. That was because KCI had more tolerance for the workplace speech rights of non-African American employees than it did for African American employees, as in the case of Mr. Morrison. In other words, KCI did not tolerate Mr. Morrison's speech because he is African American. But for Mr. Morrison's race -African American – KCI would not have discharged him from his employment.

21.     Mr. Morrison was the victim of a double standard that was in place at the KCI workplace that intentionally treated non-Black employees more favorably than African American employees. And as had been the case with him while employed at KCI, anonymous complaints would lead to more severe and dire discipline against African Americans. He was a victim of such racially discriminatory discipline, including his discharge from employment.

22.     Again, KCI has admitted that other similarly situated employees were allowed to post comments criticizing the President's blog article but were not fired. Indeed, neither were these

other employees' comments censored nor blocked from being posted because they are not Black or African American as is Mr. Morrison.

23. To restate his claim that race discrimination was the but for cause of his discharge, it is clear that KCI subjected Mr. Morrison's workplace speech to disciplinary action while it did not subject the workplace speech of non-African American employees similarly. Indeed, his workplace speech, as described in the comment he tried to post but was blocked by KCI from posting, reflects that KCI had racially discriminatory animus toward his speech because he is African American. Moreover, in investigating and taking disciplinary counseling actions against Mr. Morrison, KCI automatically gave more weight to statements of non-African American employees than it gave Mr. Morrison's simply because he is African American.

24. Mr. Morrison went on the unemployment line after December 6, 2017, when he was fired by KCI. He also filed an Unfair Labor Practice charge against KCI alleging he had been discharged for his protected, concerted activity for mutual aid or protection under the National Labor Relations Act (NLRA) based on the comment he tried to post in response to the President's Blog article, described above herein, but his ULP charge was dismissed by the NLRB. However, the NLRA does not prohibit race discrimination, but rather prohibits and remedies discrimination for NLRA covered activities.

25. Mr. Morrison's workplace speech, whether cast as protected, concerted activity under the NLRA or as employee's workplace right enjoyed by all employees in the private sector, was the target of intentional race discrimination against him by KCI. Simply stated, KCI had less tolerance for workplace speech of Mr. Morrison because he is African American, while it had

much more tolerance for the workplace speech of non-African African employees. KCI's ultimate decision maker(s) decided to discharge Mr. Morrison because of this workplace speech, which they did not tolerate from him because he is African American.

26. And although he tried and tried to find another job, he did not find another job until during June 2019. Mr. Morrison seeks back pay, including the fringe benefits that he lost because of his discharge from employment with KCI. Moreover, in lieu of his right to reinstatement to his former job, Mr. Morrison seeks front pay.

27. Because of KCI's intentional racially discriminatory discharge of Mr. Morrison, he also suffered mental anguish, emotional distress, pain and suffering, inconvenience, and loss of enjoyment of life for which he seeks compensatory damages. Mr. Morrison suffered through sleepless nights filled with worry and anxiety after being discharged.

28. The racially discriminatory treatment of KCI in discharging Mr. Morrison was willful, malicious and in wanton disregard of the rights of Mr. Morrison that entitles Mr. Morrison to seek and recover punitive damages from KCI.

## CAUSE OF ACTION

## 42 USC SEC. 1981

29. Plaintiff Michael L. Morrison re-alleges all the foregoing allegations above as if set forth at length herein.

30. At all times relevant to this action, KCI was subject to 42 U.S.C. Sec. 1981(a), (b), and (c). At all times relevant to this action, Michael L. Morrison, an African American, and KCI had

an employment contract that conferred Mr. Morrison the rights and protections under 42 USC Sec. 1981 (a), (b), and (c) with respect to the making and enforcement of a contract of employment between Mr. Morrison and KCI, including a discharge from employment.

31. Mr. Morrison suffered an intentional race-based discriminatory discharge by KCI, acting through its ultimate decision maker(s), either top managing agents and/or high-level supervisory personnel, as described herein.

32. KCI is therefore liable to him under Sec. 1981 for the spectrum of remedies available to a prevailing plaintiff under that civil rights law, both legal and equitable.

33. Mr. Morrison is therefore entitled to recover from KCI equitable relief including back pay, lost fringe benefits, front pay in lieu of reinstatement and compensatory damages for, among other things, mental anguish, emotional distress, inconvenience, pain and suffering, loss of enjoyment of life.

34. Mr. Morrison is also entitled to recover punitive damages from KCI under the facts and circumstances of his discharge, as described herein.

## RELIEF REQUESTED

35. Plaintiff requests that upon service of this complaint on KCI, KCI be required to answer this complaint, and that upon a jury trial of this cause, this court enter a final judgment in his favor against KCI that awards him the following:

A. Declare that KCI is liable to Michael Morrison under 42 USC Sec. 1981 for discharging from his employment because of his race – African American; or stated differently, that but for the fact that he is African American, KCI would not have discharged him from his employment.

B. Award Michael Morrison the remedies of back pay, lost fringe benefits and front pay in lieu of reinstatement and compensatory damages for the emotional harm that he suffered upon his discharge from employment, as described above herein.

C. Award Mr. Morrison punitive damages because of KCI's conduct, as described herein, in discharging him.

D. Award Mr. Morrison his costs of suit and post- judgment interest at the legal rate.

E. Award Mr. Morrison all equitable and legal relief to which he is entitled.

                                         Respectfully Submitted,

                                         */s/ Michael Morrison*
                                         Michael L. Morrison
                                         7520 Potranco Rd.
                                         San Antonio, Texas 78251
                                         Phone No. (210) 262-9134
                                         Fax No. N/A
                                         Email Address:
                                         morrison1198@netzero.net
                                         Plaintiff *Pro Se*